Filed 5/22/26  In re A.R. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | B348515 (Los Angeles County Super. Ct. Nos. 24CCJP03113A, 24CCJP03113B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| S.R., | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of the County of Los Angeles, Marguerite D. Downing, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

S.R. (father) appeals from the juvenile court's exit order granting N.Z. (mother) sole physical custody over A.R. (born February 2021) and Thomas R. (born September 2023). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Early in their lives, A.R. and Thomas began witnessing their parents' domestic violence. During a November 2022 altercation in A.R.'s presence, father allegedly kicked and threw things at mother and brandished a firearm. Criminal charges, including possession of a firearm by a felon, were brought against father, and the criminal court issued a three-year criminal protective order prohibiting him from approaching mother and A.R., contacting them, blocking their movements, and seeking to determine their whereabouts. A.R. was declared a dependent based on the altercation, parents' history of domestic violence, and father's 2019 conviction for spousal battery. In October 2023, jurisdiction in the dependency case was terminated with an order granting mother sole custody and father, who had not completed his reunification plan, supervised visitation.

---

[1]    We do not recite the entire factual and procedural background, as the parties are familiar with the facts of the case and its history. (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847, 851.)

The instant appeal arises from a second dependency case following another altercation in May 2024 when A.R. and Thomas witnessed mother throwing a knife at father that ricocheted off a wall. The children were removed from the home and declared dependents of the Orange County juvenile court due to parents' failure to protect. The petition described the May 2024 altercation, parents' unresolved problem with domestic violence; and their mutual violations of the criminal protective order. It also described father's failure to complete the anger management program ordered in the prior dependency case and his extensive criminal history.

In October 2024, the case was transferred to the Los Angeles Superior Court and assigned to the Los Angeles County Department of Children and Family Services (DCFS). The juvenile court ordered reunification services for both parents.

By February 2025, mother was employed, had completed parenting and domestic violence programs, enrolled in individual therapy, was returning negative drug test results, and had been granted unmonitored visitation. The children were returned to her care. Though father was slower to comply with his reunification plan, he obtained employment, eventually completed parenting and domestic violence programs, and began returning negative drug tests. Despite this progress, however, mother and father still struggled to coparent, and they continued to have heated arguments largely centered around father providing financial support for the children.

Father requested overnight visitation, and in May 2025, DCFS assessed the two-bedroom home he shared with paternal step-grandfather (grandfather). The social worker described the living room as "overwhelmingly cluttered" because boxes and

3

large black bags filled with clothing, mannequins, and household items were piled very high, in some places near the ceiling, and on the sofa. Father indicated that the items, which belonged to grandfather, could not be moved. DCFS deemed the home an "unsafe and unsuitable environment for young children, particularly for overnight stays" due to very limited walking space and tripping hazards. As of mid-July 2025, these conditions were unremediated.

Three criminal cases involving father were active throughout the dependency proceedings, including the case in which the criminal protective order issued. Father disclosed he was scheduled to serve jail time but hoped to receive a minimum sentence of four months. It was unknown when incarceration would begin. A pretrial hearing scheduled for July 2025 was later continued to September.

In August 2025, the juvenile court conducted a contested section 364 hearing. Father did not present evidence but requested that the court either keep the case open or place the children in his home. The court terminated jurisdiction and ordered joint legal custody of the children, sole physical custody to mother, and unmonitored visitation to father. It found that the criminal protective order did not permit father to have physical custody, his home had not been assessed as appropriate, and he continued to have challenges peacefully coparenting with mother.

Father filed a notice of appeal.

## DISCUSSION

On appeal, father argues that substantial evidence did not support an implied finding that the children's best interests were

4

served by granting mother sole physical custody.  He argues the children were then living with mother, and the court improperly deferred to this "status quo."  Further, he contends the court erroneously based its custody ruling on a misunderstanding of the criminal protective order.

**A.    Governing Law**

The purpose of the section 364 hearing was for the court to review the services provided to the family and the progress made by the family in eliminating the conditions or factors that required court supervision.  (Welf. & Inst. Code, § 364, subd. (b).)  Section 362.4 empowers the juvenile court, if it terminates jurisdiction over a dependent minor, to issue an order determining the custody of the child.  (Welf. & Inst. Code, § 362.4, subd. (a).)  The court's focus and primary consideration in making such an order must always be the best interests of the child.  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.)  Because dependency proceedings arise when children are subject to or at risk of abuse or neglect, the presumption of parental fitness that underlies custody law in the family court does not apply.  (*In re J.M.* (2023) 89 Cal.App.5th 95, 112 (*J.M.*).)  We review the juvenile court's custody ruling for an abuse of discretion and will not disturb it unless the decision was arbitrary, capricious, or patently absurd.  (*Id.* at p. 113.)

**B.    Analysis**

We discern no abuse of the juvenile court's discretion.  Substantial evidence supported its implied finding that the children's best interests were served by granting mother sole physical custody.  (See *In re S.G.* (2003) 112 Cal.App.4th 1254,

1260 [reviewing court "will infer a necessary finding provided the implicit finding is supported by substantial evidence"].)  Contrary to father's assertions, the court did not grant physical custody to mother merely because that was the status quo.  Rather, mother had proved she could care for the children.  DCFS reported mother "demonstrated that she is able to provide a safe environment to her children and has the protective capacity to do so," and it recommended she have sole physical custody.

On the other hand, evidence of father's behavior indicated it would not be in the children's best interests for him to have custody.  He continued to be combative with mother when discussing financial support for the children, even when social workers were present to facilitate the conversation.  Further, father demonstrated a lack of insight regarding his responsibility for past domestic violence by repeatedly violating the criminal protective order.  For example, he tried to talk to mother after a court hearing and blocked the movement of her vehicle, and he pressured her to disclose her address after she moved to a new home.  Father also could not provide a safe home for A.R. (then four years old) and Thomas (then less than two years old).  He lived in a cluttered home that was deemed unsafe for overnight visits, and he was unable or unwilling to remediate these conditions.  The court also had reason to doubt whether father would be available to oversee the children on a day-to-day basis.  He faced trial and sentencing in his criminal cases, which included felony charges, and he expected to be incarcerated for at least four months beginning on an unknown date.  From these circumstances, the court could reasonably conclude that the children's best interests would not be served in father's custody.

Father argues the juvenile court's order should be reversed because the court mistakenly believed the criminal protective order precluded it from granting him physical custody of the children. Father further notes that Thomas was not a protected person under the protective order, which issued before he was born.

To the extent the juvenile court erred in relying on the order to deny him physical custody of the children, particularly Thomas, any such error was harmless. (*B.D. v. Superior Court* (2025) 110 Cal.App.5th 1132, 1160 [harmless error applies in dependency proceedings, and we reverse only if it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error].) The juvenile court had ample evidence to support a finding that their best interests were served by placing them in mother's custody, and there is no reasonable probability that its decision would have changed if it had not considered the protective order. Should the conditions upon which the custody order was based change in the future, father is free to seek joint physical custody in the family law court. (*J.M., supra,* 89 Cal.App.5th at p. 115.)

## DISPOSITION

The juvenile court's order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MORI, J.

We concur:

ZUKIN, P. J.

COGLIATI, J. **

---

**      Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.